UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL THOMPSON,

     Petitioner,     Case Number 12-10781
               Honorable David M. Lawson

v.

LLOYD RAPELJE,

     Respondent.
_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Michael Thompson, a prisoner in the custody of the Michigan Department of Corrections, has filed a petition for a writ of habeas corpus challenging his convictions for criminal sexual conduct and producing child sexually abusive materials. The victim in the case was his girlfriend's twelve-year-old daughter. Thompson has asserted fourteen separate grounds for relief, including claims that the evidence was insufficient to establish the penetration element of first-degree criminal sexual conduct, his arrest was improper and the resulting confession should have been suppressed, his attorneys did not perform effectively, the prosecutor suppressed favorable evidence, and the court erred in allowing testimony about the victim's out-of-court statements. The respondent has filed an answer to the petition contending that many of the claims were not preserved properly and should not be addressed on the merits, some of them are not cognizable on habeas review, and all of the claims are meritless. The Court finds that the petitioner's claims lack merit, and therefore will deny the petition.

I.

The petitioner was charged with one count each of first-degree criminal and second-degree criminal sexual conduct, and three counts of producing child sexually abusive materials. A Calhoun County, Michigan jury convicted him as charged. The offenses involved his girlfriend's minor daughter, identified in the record as A.B.

At trial, Ginger Huffman testified that in March 2008 she lived with the petitioner, his two sons, and her two daughters, one of whom is the victim in this case. She and the petitioner had been dating for about a year. On March 24, 2008, she was preparing to celebrate the petitioner's son's birthday. The petitioner was working and could not attend the celebration. Huffman intended to take pictures of the celebration to share with the petitioner. She phoned the petitioner at work to ask him where his camera was. He stayed on the phone while she located the camera. She checked the memory card to make sure it was not full. In doing so, she came across nude pictures of her daughter, A.B. The petitioner, who was still on the phone, told her to stay calm and they would figure it out when he got home from work. After ending the phone call, Huffman asked her daughter about the pictures. A.B. told Huffman that the petitioner had taken the pictures. Huffman testified that she then packed a bag and she and her two daughters went to her grandmother's house.

The petitioner repeatedly tried to contact Huffman. The next day, Huffman spoke to the petitioner. He admitted taking the pictures, but stated that he had only done so one time. He also asked her not to turn him in to the authorities. The next day, after dropping her daughters at school, Huffman turned over the camera to the Battle Creek Police Department.

A.B. testified that she was twelve years old, and in January and February of 2008, she lived with her mother, the petitioner, her sister, and the petitioner's two sons. On three separate

occasions, beginning in January 2008, the petitioner took pictures of her. The first and second times, he took pictures of her in her bra. The third time, he told her to put on a skimpy outfit and took pictures of her wearing that. He then told her to take off the outfit and took pictures of her naked. During the third encounter, after she put her clothes back on, he put his hand down her pants and touched her. She testified that he touched her vagina.

Colette Gushurst testified that she is a pediatrician and professor of pediatrics for Michigan State University. She testified as an expert in pediatrics and the treatment of child abuse victims. She examined A.B. on March 28, 2008, after the pictures came to light. A.B. told Dr. Gushurst that the petitioner touched her breast, kissed her cheek and touched her under her pants. Dr. Gushurst testified that she asked A.B. to show her where the petitioner touched her. A.B. pointed to her mons pubis and her clitoral area. She also pointed to the area of her labia. In an effort to elicit more information, Dr. Gushurst separated the labia with a curette and asked A.B. whether she had been touched there. A.B. was not sure whether she had been touched there.

Brad Wise testified that he is a detective with the Battle Creek Police Department. He testified that on March 24, 2008, he interviewed Huffman. After reviewing the photographs contained on the camera turned over by Huffman, he and another detective, Jeff Coons, went to the petitioner's residence and arrested him. He did not have an arrest warrant at the time. The petitioner was brought to the police station, where he was interviewed. The videotaped interview was played for the jury.

Defense counsel moved for a directed verdict at the close of the prosecution's case. The motion was denied. The defense then rested without presenting any witnesses.

-3-

After deliberating for approximately thirty minutes, the jury returned a verdict of guilty on all charges. The petitioner was convicted and sentenced to concurrent prison terms of 25 to 40 years for first-degree criminal sexual conduct, 71 to 180 months for second-degree criminal sexual conduct, and 85 to 240 months for each count of producing, making or financing child sexually abusive material.

The petitioner filed a direct appeal in the Michigan Court of Appeals and a motion to remand for a hearing on his ineffective assistance of counsel claims. He alleged that (i) his trial attorney was ineffective during the plea-bargaining process by failing to inform the petitioner that he faced a 25-year mandatory minimum sentence if convicted of first-degree criminal sexual conduct; and (ii) his attorney was ineffective because he promised the jury during opening statement that the petitioner would testify, even though he had no intention of calling the petitioner as a witness. The Michigan Court of Appeals granted the motion to remand. The trial court held an evidentiary hearing on July 10, 2009, during which the petitioner withdrew his first ineffective assistance of counsel claim. The trial court denied the second claim on the merits. *See People v. Thompson*, No. 08-1187, July 15, 2009 Opinion and Order.

The petitioner then filed his brief on appeal in the Michigan Court of Appeals, raising these claims (the first two through counsel, the latter two in a *pro se* supplemental brief): (i) insufficient evidence was presented to prove penetration; (ii) counsel was ineffective by promising during opening argument to call the petitioner to testify, but then not calling him as a witness; (iii) the petitioner's statement must be suppressed as the fruit of an illegal arrest; and (iv) counsel was ineffective by failing to investigate. The Michigan Court of Appeals affirmed the petitioner's convictions. *People v. Thompson*, No. 287997, 2009 WL 4985244 (Mich. Ct. App. Dec. 22, 2009).

-4-

The petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals and the following additional claims: (i) counsel was ineffective by failing to investigate and interview promising witnesses; (ii) the Michigan Court of Appeals erred by finding that the officers needed to arrest the petitioner to avoid the destruction of evidence; (iii) the victim's mother's testimony was inadmissible hearsay; and (iv) the petitioner's statement should have been suppressed because the police lacked probable cause to arrest the petitioner. The Michigan Supreme Court denied leave to appeal. *People v. Thompson*, No. 486 Mich. 1045 (Mich. June 28, 2010).

The petitioner filed a motion for relief from judgment in the trial court raising these claims: (i) the police violated the Fourth Amendment by arresting the petitioner without a warrant; (ii) the Fourth Amendment was violated because the petitioner was held without a probable cause hearing; (iii) the petitioner's attorney at his preliminary examination was ineffective by failing to investigate a medical report of the victim; (iv) the state withheld the medical report in violation of *Brady v. Maryland*; (v) defense counsel failed to object to the videotaped statement being played to the jury, failed to cross-examine the victim about inconsistencies in her story, and the trial court never ruled on the issue of voluntariness; and (vi) appellate counsel failed to raise meritorious claims. The petitioner also filed a motion to vacate on the ground that the trial court lacked subject matter jurisdiction because the magistrate failed to file a proper return following the preliminary examination. The trial court denied the motion for relief from judgment and the motion to vacate. *People v. Thompson*, No. 08-1187, Dec. 9, 2010 Order Denying Defendant's Motion for Relief from Judgment.

The petitioner then filed a motion to vacate or for peremptory reversal and an application for leave to appeal in the Michigan Court of Appeals. He raised these claims: (i) the trial court lacked subject matter jurisdiction; (ii) the warrantless arrest violated the Fourth Amendment; (iii) the petitioner was improperly held without a probable cause hearing; (iv) his attorney furnished ineffective assistance at the preliminary examination; (v) the victim's statements were not properly admissible as excited utterances; (vi) the prosecutor withheld a medical report in violation of *Brady v. Maryland*; (vii) his trial attorney was ineffective by failing to object to the videotaped statement being played for the jury, failing to cross-examine the victim about inconsistencies in her stories, failing to interview the state's witnesses, and failing to ask the court to rule on the admissibility of the confession; and (viii) trial counsel was ineffective by failing to object to hearsay testimony and failing to investigate the lack of medical evidence supporting a finding of penetration. The Michigan Court of Appeals denied leave to appeal and denied the motion, *People v. Thompson*, No. 302653 (Mich. Ct. App. May 19, 2011), and the state supreme court followed suit, *People v. Thompson*, 490 Mich. 968 (Mich. Dec. 21, 2011).

The petitioner then filed the present petition for a writ of habeas corpus and a subsequent memorandum of law in support of the petition. The petition raises nine claims for relief (numbered one through nine); the memorandum of law raises twelve claims for relief (numbered I -XII). Some of these claims overlap. For clarity, the Court has summarized the claims as follows:

I.      The prosecutor did not offer sufficient evidence to prove the penetration element of first-degree criminal sexual conduct.

II.     Trial counsel was ineffective by promising the jury that the petitioner would testify and then not calling him as a witness.

III.    The petitioner's statement should have been suppressed as the fruit of an illegal arrest.

IV.     The trial court lacked subject matter jurisdiction.

V.      The petitioner's Fourth Amendment rights were violated by the warrantless arrest.

VI.     The petitioner was held in custody without a probable cause hearing.

VII.    The prosecutor withheld a medical report in violation of *Brady v. Maryland*.

VIII.   Trial counsel was ineffective by failing to object to the admission of the petitioner's videotaped statement and trial court never ruled on the admissibility of the confession.

IX.     Neither the attorney who represented the petitioner at the preliminary examination nor trial counsel properly investigated the case.

X.      Counsel who represented the petitioner during the pretrial stage failed to investigate the medical evidence.

XI.     Both attorneys failed to attack inconsistencies in the victim's story.

XII.    Defense counsel was ineffective by failing to interview the state's witness or any other witness.

XIII.   The victim's statements were not properly admitted as excited utterances.

XIV.    Defense counsel failed to object to hearsay testimony.

The respondent filed an answer contesting the merits of the petition, and raising a procedural default defense for several of the issues. The Court finds it unnecessary to address the question of procedural default. It is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ( citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Application of a procedural bar would not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

-7-

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Thompson filed his petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and

demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

### A.

First, the petitioner argues that the prosecutor presented insufficient evidence to sustain his conviction for first-degree criminal sexual conduct because there was a want of proof on the element of penetration.  The state courts rejected that claim on the merits, as discussed in more detail below.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

-9-

a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  In the

habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive

elements of the criminal offense as defined by state law.'"  *Brown v. Palmer*, 441 F.3d 347, 351 (6th

Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16)).

Under Michigan law the elements of first-degree criminal sexual conduct, as charged in this

case, are that the defendant engaged in sexual penetration with another person and the other person

was under thirteen years of age.  Mich. Comp. Laws § 750.20b(1)(a); *People v. Hammons*, 210

Mich. App. 554, 557 (1995).  The Michigan Court of Appeals held that sufficient evidence was

presented to sustain the petitioner's conviction for first-degree criminal sexual conduct, reasoning,

in relevant part:

> M.C.L. 750.520a(r) provides: "'Sexual penetration' means sexual intercourse,
> cunnilingus, fellatio, anal intercourse, or *any other intrusion, however slight*, of any
> part of a person's body or of any object into the genital or anal openings of another
> person's body, but emission of semen is not required." [Emphasis added by
> Michigan Court of Appeals].  This includes penetration of the labia majora.  *People
> v. Bristol*, 115 Mich. App. 236, 238, 320 N.W.2d 229 (1981).
>
> Complainant testified that defendant "basically" was "playing with [her] pubic hairs"
> but at one point "his finger went between my — where I go to the bathroom, my
> vagina."  She had previously described the touching as not "up in" but moving his
> finger along the outside of the vagina between the "fleshy areas."  She said that it
> lasted minutes and felt "really awkward."  In a video recording, defendant denied
> touching complainant's vagina or parting the lips of the labia.  However, based on
> complainant's testimony, especially the comment that defendant moved his finger
> along the outside of the vagina "between" the "fleshy areas," and that the episode
> lasted for minutes, a rational jury could infer that he penetrated her labia.

*Thompson*, 2009 WL 4985244 at *1.

The petitioner faces a steep climb to establish that the state court's discussion of the evidence

unreasonably applied the *Jackson* standard in this case.  "Two layers of deference apply to habeas

claims challenging evidentiary sufficiency."  *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010)

-10-

(citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319).  Second, if the Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Ibid.*  Indeed, the *Jackson* standard is "exceedingly general" and therefore Michigan courts are afforded "considerable leeway" in its application. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011).

The two items of trial evidence that furnished proof relating to the question of penetration were the testimony of A.B. and the petitioner's videotaped statement.  As noted by the Michigan Court of Appeals, A.B.'s testimony could support a finding that the petitioner penetrated her labia. In addition, although the petitioner denied touching the victim's vagina during most of his videotaped statement, at one point he did confess to touching the "outside of her vagina."  A reasonable jury could have found that, taken together, A.B.'s testimony and the petitioner's statement established "that he penetrated her labia," as the court of appeals concluded.  The evidence of penetration was not overwhelming, but the state courts' gloss of the evidence was reasonable. It certainly was within the realm of "fairminded disagreement." *Harrington*, 562 U.S. at 103.  No relief is warranted on this claim.

-11-

B.

Next, the petitioner raises two claims alleging violations of the Fourth Amendment. He argues that his rights were violated when he was arrested without a warrant and that his videotaped statement should have been suppressed as the fruit of an illegal arrest.

Neither of these claims will be addressed on the merits, because the petitioner cannot overcome the obstacle created by *Stone v. Powell*, in which the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494-95 (1976).

The Sixth Circuit Court of Appeals employs a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted). "Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). Because Michigan provides a procedural mechanism for raising a Fourth Amendment claim, the petitioner may only demonstrate entitlement to relief if he establishes that presentation of his claim was frustrated by a failure of that mechanism. This he has not done.

The petitioner's Fourth Amendment claims were raised on direct appeal. The Michigan Court of Appeals addressed the issue at length and found no Fourth Amendment violation. *Thompson*, 2009 WL 4985244 at *2. Further, that court held that, even if a Fourth Amendment

-12-

violation occurred, sufficient evidence was presented to sustain the petitioner's convictions even absent his confession. *Ibid.* The Michigan Supreme Court denied leave to appeal. The petitioner was provided an opportunity for full and fair litigation of his Fourth Amendment claims in the Michigan courts. His disagreement with the state courts' conclusions on his Fourth Amendment claims does not render the state's procedural mechanism inadequate. These claims are barred by the rule in *Stone v. Powell*.

C.

The petitioner argues that he was improperly held without a probable cause hearing. "[T]he Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest." *County of Riverside v. McLaughlin*, 500 U.S. 44, 47 (1991) (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)). Generally, a judicial determination of probable cause within forty-eight hours of arrest will comply with *Gerstein*'s promptness requirement. *Id.* at 56. In his brief, the petitioner acknowledges that he was arrested and interviewed immediately by the police. He was charged with manufacturing obscene material and lodged in the county jail. A warrant was issued by a state magistrate, and the defendant was arraigned, albeit via a video link. The warrant likely was issued by the magistrate based on the detective's testimony. No warrant could issue absent a determination of probable cause of the magistrate. *See* Mich. Ct. R. 6.102(A), (B). The petitioner has not alleged that these procedures took place beyond *Gerstein*'s 48-hour benchmark, and the record does not support such a claim.

Moreover, an "illegal . . . detention does not void a subsequent conviction." *Gerstein*, 420 U.S. at 119. The petitioner has not shown that a constitutional violation occurred when he was detained and questioned.

-13-

D.

The petitioner next argues that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to disclose to the defense a medical report about the victim prior to the preliminary examination. The report was made available to defense counsel before trial, and the examining physician testified.

The Due Process Clause requires that the government disclose exculpatory evidence to a defendant if it is "material either to guilt or to punishment." *Id.* at 87. However, "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Ross*, 703 F.3d 856, 881 (6th Cir. 2012) (internal quotation marks omitted). If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant can demonstrate prejudice. *Id.* at 881-82.

The petitioner acknowledges that the prosecution produced the medical report approximately two months before trial. The report, therefore, was not withheld from the defense. Even if that disclosure can be considered "delayed," habeas relief is not warranted because the petitioner has not shown how he was prejudiced by the timing of the production.

E.

The petitioner next raises a claim related to the admission of the victim's statement to Dr. Gushurst. He appears to argue that the victim's testimony that she told Dr. Gushurst that the petitioner touched her genitalia is impermissible hearsay and its admission violated his rights under the Confrontation Clause. This claim raises two issues: one evidentiary and one constitutional. As to the first, the argument that the out-of-court statements violated state evidentiary law is not a cognizable claim on federal habeas corpus review. *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir.

-14-

2009). However, the admission of hearsay could implicate a petitioner's rights under the Confrontation Clause.

Turning to the second issue, it is true that the Confrontation Clause of the Sixth Amendment, which is applicable to the States through the Fourteenth Amendment, *Idaho v. Wright*, 497 U.S. 805, 813 (1990), guarantees defendants in criminal prosecutions "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him." *Giles v. California*, 554 U.S. 353, 358 (2008) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)).

Here, both A.B. and Dr. Gushurst testified at trial and defense counsel cross-examined both of those witnesses. "[N]one of [the Supreme Court's] decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial." *California v. Green*, 399 U.S. 149, 161 (1970). On the contrary, "where the declarant is not absent, but is present to testify and submit to cross-examination, [the Supreme Court's] cases, if anything, support the conclusion that the admission of [the witness's] out-of-court statements does not create a confrontation problem." *Id.* at 162; *see also Crawford*, 541 U.S. at 59 n.9.

No constitutional violation resulted from testimony about A.B.'s out-of-court statements.

-15-

F.

The petitioner raises several ineffective assistance of counsel claims relating to the representation provided by the attorney who represented him during the preliminary examination, Richard Pichlik, and trial counsel, Richard Stevens.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "[A] defendant must show both deficient performance and prejudice in order to prove that he has received ineffective assistance of counsel." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Because of the high deference accorded state court determinations by AEDPA, establishing that counsel was ineffective and, therefore, the petitioner was denied his right to counsel under the Sixth Amendment is difficult. The Supreme Court explained in *Richter* that

> "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S. Ct. 2052; *Lindh v. Murphy*,

-16-

521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at 123.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  *Ibid*.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105.

In other words, on habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'"  *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Ibid*. (citing *Alvarado*, 541 U.S. at 664).

With those principles in mind, the Court turns to the petitioner's specific claims.

1.

First, the petitioner argues that the attorney who represented him during the preliminary examination was ineffective by: (a) failing to properly investigate the case generally and the medical evidence specifically; (b) failing to discuss jury trial rights with the petitioner; (c) failing to meet with the petitioner before the preliminary examination; (d) failing to attack inconsistencies in the victim's story; (e) failing to interview other household members; (f) failing to consult an expert in child sexual abuse; (g) failing to interview the victim; (h) failing to investigate claims regarding Fourth Amendment violations; and (i) conceding that the physical evidence established penetration.

The petitioner raised the claim in his *pro se* brief on direct appeal that his attorney at the preliminary examination failed to investigate the case.  The Michigan Court of Appeals denied the

-17-

claim, finding the arguments rambling and based largely on sufficiency of the evidence rather than matters related to ineffective assistance of counsel. The state court concluded that the claims actually related to his ineffectiveness arguments "consist of speculation, do not find support in the record, and are legally unavailing. Defendant has not established deficient performance, nor prejudice." *Thompson*, 2009 WL 4985244 at *3. The remaining claims related to the representation by preliminary-examination counsel were raised on collateral review. The trial court denied those claims in summary fashion, finding that they were "without merit." *People v. Thompson*, No. 08-1187, Dec. 9, 2010 Order Denying Defendant's Motion for Relief from Judgment at 2.

The state courts' disposition of these claims was a reasonable application of *Strickland*. The petitioner's challenges to counsel's performance are conclusory and scattershot. The petitioner argues that counsel should have investigated the medical evidence and challenged the question of penetration at the preliminary examination. The preliminary examination transcript shows that counsel cross-examined the victim on this issue. A.B. testified that the petitioner did not touch inside her vagina, but between the fleshy areas outside. The petitioner does not specifically allege nor can the Court discern any specific investigation or questioning counsel could have or should have undertaken in preparation for the preliminary examination, which would have assisted in the petitioner's defense on this issue. The petitioner further argues that counsel should have requested a continuance to obtain a copy of the medical report. The medical report did not negate the element of penetration. Having a copy of the medical report in advance of the preliminary examination would not have altered the victim's testimony, nor would it have contradicted the victim's testimony because the question of penetration of the labia majora was not definitively answered in the report. Therefore, the petitioner has not shown prejudice. Similarly, the petitioner has not shown any

prejudice from counsel's failure to contact or interview the doctor who examined the victim prior to the preliminary examination or from counsel's failure to interview anyone else who lived in the home.

The petitioner alleges that counsel failed to discuss with him his jury trial rights. The petitioner does not allege that he would have waived his right to a jury trial had this issue been discussed with him. Moreover, the petitioner could not have waived a jury unless the prosecutor and the court consented. *See* Mich. Ct. R. 6.401. Nor has he alleged or shown resulting prejudice. This claim is meritless.

Next, the petitioner argues that counsel failed to talk to him before the day of the preliminary examination. However, the preliminary examination transcript reveals that the attorney who represented the petitioner was prepared for the proceeding, aware of the charges, and competently cross-examined the victim. Although defense counsel always should meet with his or her client before proceeding to a court hearing, the petitioner has not identified any way in which counsel's performance suffered because he did not meet with the petitioner in the days preceding the preliminary examination.

The petitioner's claim that counsel failed to attack the victim's story at the preliminary examination is belied by the record. The transcript shows that counsel questioned the victim about her failure to report the conduct to her mother; and that when her mother finally discovered the pictures on the camera, the victim still did not disclose to her mother that the petitioner had touched her. Counsel's questioning of the victim was not belligerent or accusatory in tone, but it nevertheless explored potential inconsistencies in her testimony.

-19-

The petitioner argues that his attorney at the preliminary examination was ineffective by failing to interview any other witnesses in the household. As with many of the petitioner's other ineffectiveness claims, this one lacks in substantive support. A.B. testified that the picture-taking and sexual assault occurred when no one else was around. It is unclear what helpful information could have been uncovered by interviewing other household members and the petitioner offers no affidavits or even conjecture as to what information may have been uncovered. The conclusory allegations are inadequate to establish that the state court's denial of this claim was an unreasonable application of *Strickland*. The same is true for the petitioner's argument that counsel should have consulted an expert in child sexual abuse. Other than an apparent hope that such a consultation would yield favorable information, the petitioner offers no argument or affidavit suggesting any specific information the expert might have offered.

Although it is always prudent for defense counsel to interview witnesses before a court hearing, the petitioner has not identified anything that was lost by counsel's failure to attempt an interview. Moreover, it is unlikely that the victim's mother would have consented to such an interview.

The petitioner also argues that his preliminary-examination attorney was ineffective because he did not investigate possible Fourth Amendment violations. However, arguments that evidence should be excluded are not waived by failing to assert them at a preliminary examination. *See* Mich. Ct. R. 6.110(D). Moreover, the Michigan Court of Appeals found the petitioner's Fourth Amendment claims meritless. Therefore, he cannot show that he suffered prejudice.

Finally, contrary to the petitioner's assertion, preliminary-examination counsel did not concede that the physical evidence in this case indicated penetration when the prosecutor moved to

-20-

amend the charges to include a charge of first-degree criminal sexual conduct. Instead, counsel simply allowed that whether to permit amendment of the charges was within the court's discretion.

2.

The petitioner also argues that trial counsel was constitutionally ineffective in several ways. He contends that his trial attorney performed deficiently by: (a) promising the jury during his opening statement that the petitioner would testify and be subject to cross-examination and then failing to deliver on that promise; (b) failing to object to the admission of the petitioner's videotaped statement; (c) failing to investigate; (d) failing to attack inconsistencies in the victim's story; (e) failing to object to hearsay testimony; and (f) failing to require the prosecutor to locate and serve the victim when the state wanted to delay the trial.

a.

The most serious of the claims is the first. Defense counsel began his opening statement by promising the jury they would hear from the petitioner as a witness at trial:

> The defendant I believe is going to testify in this case, he's going to tell you — I know he's going to testify — he's going to tell you he did not commit criminal sexual conduct in [the] first degree. He's going to tell you that he did not penetrate this girl's vagina with his finger, now, how — how is this going to happen? Well, he's going to testify that, he's going to make himself available for cross-examination on everything that happened by taking the stand. The prosecutor I'm sure will ask him a lot of questions about some of these other things. My point is he's going to testify that he did not digitally or use his finger to penetrate the vagina.

Trial Tr. at 63 (Aug. 26, 2008). Defense counsel ended his opening statement by once again promising defendant would testify:

> And if you'll just keep an open mind, and listen to the defendant testify and listen to the things that he's going to have to admit, but that he will adamantly deny that he ever penetrated this girl's vagina with his finger or any other part of his body.

*Id.* at 64. Of course, the petitioner did not testify or call any witnesses.

-21-

On direct appeal, the Michigan Court of Appeals remanded the case to the trial court for an evidentiary hearing on the petitioner's claim that counsel was ineffective by promising that the petitioner would testify. The trial court held an evidentiary hearing on July 10, 2009. Defense counsel testified that, at the time of the opening statement, he believed the petitioner would testify, but, at the same time, he "wanted to keep [his] options open." Hr'g Tr. at 8 (July 10, 2009). Defense counsel then explained that after he saw the jury's reaction to the petitioner's videotaped statement, he concluded that the statement conveyed to the jury the petitioner's version of events in as sympathetic a light as possible. He believed that it was not worth the risk to place the petitioner on the stand and subject him to cross-examination when, defense counsel believed, the net impact of the videotape was more positive than live testimony could be. Following the evidentiary hearing, the trial court issued a written opinion denying the petitioner's motion for new trial. The trial court held that, even though counsel had promised the jurors that the petitioner would testify, it was a reasonable trial strategy for defense counsel to conclude that the videotape presented the defense in the best possible light and it was not worth the risk to place the petitioner on the stand and subject him to cross-examination.

The Michigan Court of Appeals agreed with the trial court's conclusion:

To justify reversal based on ineffective assistance of counsel, a defendant must first show that counsel's performance was deficient, overcoming a strong presumption that counsel's performance constituted sound trial strategy, and then the defendant must establish that the deficient performance prejudiced the defense, i.e., a showing that there existed a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v. Carbin*, 463 Mich. 590, 599-600, 623 N.W.2d 884 (2001). Following this Court's order remanding the case for an evidentiary hearing, the trial court concluded in a written opinion that counsel's performance was not deficient. We agree with the assessment and reasoning of the trial court as reflected in its opinion. Moreover, even assuming that counsel's performance was deficient, defendant has not established the requisite prejudice. The jury heard from defendant by way of a video recording of a police interrogation,

-22-

which counsel found to be superior to putting defendant on the stand. Given the evidence of guilt, the limited harm, if any, of the broken promise that defendant would testify, and given the court's instruction to the jury that it could not consider defendant's failure to take the stand in rendering its verdict, we find that defendant has not shown that there existed a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.

*Thompson*, 2009 WL 4985244 at *1.

Was that holding — that defense counsel's tactic of promising in opening statement that his client would testify so that he could "keep his options open" was neither deficient performance nor prejudicial — a reasonable application of *Strickland*? Federal courts of appeals have held that, absent unforeseeable events, an attorney's failure to present testimony which is promised during opening statements "may be unreasonable, for 'little is more damaging than to fail to produce important evidence that had been promised in an opening.'" *U.S. ex rel. Hampton v. Leibach*, 347 F.3d 219, 257 (7th Cir. 2003) (citing *Anderson v. Butler*, 858 F.2d 16, 17 (1st Cir. 1988)). In *Hampton*, the Seventh Circuit found that, where trial counsel promised the jury that the defendant would testify in his own defense and would offer evidence that he was not in a gang and then failed to fulfill that promise, the conduct was unreasonable. *Id.* at 257-60. The Seventh Circuit acknowledged that a change in trial strategy could be justified in the case of unforeseen developments, but such was not the case in *Hampton*. *Id.* at 258. The Seventh Circuit held that the broken promise was "not so prejudicial that it would support relief in and of itself" but, instead, "underscore[d] the more important failure to investigate exculpatory occurrence witnesses." *Id.* at 260.

In *English v. Romanowski*, 602 F.3d 714 (6th Cir. 2010), the Sixth Circuit, on habeas review, found ineffective assistance of counsel when an attorney failed to properly investigate a witness's potential testimony before trial and then did not call the witness to testify despite having promised

the jury that the witness would testify.  The Sixth Circuit reasoned that, if the attorney had fully investigated the witness and her story before opening statements, the attorney would not have promised to call her as a witness.  *Id.* at 728.

In *Ouber v. Guarino*, 293 F.3d 19 (1st Cir. 2002), the First Circuit found objectively unreasonable defense counsel promising to the jury during his opening statement that the defendant would testify and then later advising the defendant not to take the stand.  The defendant in *Ouber* was standing trial for the third time; the first two ended in jury deadlocks.  The attorney representing him in the third trial also had represented the defendant in the first two trials.  The defendant testified in his own defense at the first two trials.  Defense counsel built the entire defense around the defendant's anticipated testimony, calling 24 character witnesses to testify about the defendant's reputation for truthfulness.  *Id.* at 28 n.4.  In addition, there were no developments in the third trial that would have justified counsel's decision to change strategy.  *Id.* at 29.  The First Circuit concluded that counsel's decision to break the promise was both incompetent and prejudiced the defense, and that the state court's finding to the contrary was an unreasonable application of *Strickland*.

The problem in this case is not trial counsel's decision to keep the petitioner off the witness stand.  By any measure, that decision was reasonable trial strategy.  The petitioner's videotaped confession allowed him to place his version of events before the jury without subjecting him to cross-examination.

Rather, the deficient performance occurred when defense counsel unequivocally promised the jury that the petitioner would testify, when apparently there was doubt in his own mind whether he was committed to that course of action.  His promise to the jury that the petitioner would testify

-24-

clearly did not keep his options open. To the contrary, it cemented the decision, and foreclosed the alternative. Creating such an expectation in the mind of the jury when defense counsel harbored even the slightest doubt that his promise would be fulfilled constituted performance that falls below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Even when applying the double-deference that is required, a contrary decision does not reasonably apply *Strickland*.

That leaves the question of prejudice, and the state courts' determination that none was shown. The court of appeals reasoned:

> Given the evidence of guilt, the limited harm, if any, of the broken promise that defendant would testify, and given the court's instruction to the jury that it could not consider defendant's failure to take the stand in rendering its verdict, we find that defendant has not shown that there existed a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.

*Thompson*, 2009 WL 4985244 at *1. This Court cannot grant habeas relief on this claim unless the state courts' reasoning is so deficient that it falls "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. And when assessing the determination that no prejudice resulted, this Court must afford the state court "even more latitude to reasonably determine that a defendant has not satisfied [the *Strickland* prejudice] standard." *Knowles*, 556 U.S. at 123.

In evaluating the state courts' reasoning, one must acknowledge that the effect of the broken promise in this case was tempered by the fact that the jury heard the petitioner's version of events at length through the videotape. The petitioner, in his own words, described his actions and remorse. The evidence against the petitioner was significant. He admitted taking photographs of the victim and touching her inappropriately. The only major fact at issue was the question of penetration. The jury deliberated for only approximately 30 minutes. And, the jury was instructed that the petitioner had no obligation to present evidence and that no adverse inference should be drawn from his failure

to testify.  With all of that, this Court cannot conclude that the state courts' finding of no prejudice — or at least the sort of prejudice *Strickland* requires: enough to "sufficient[ly] undermine confidence in the outcome," 466 U.S. at 694 — unreasonably applied Supreme Court precedent.

b.

Next, the petitioner argues that trial counsel was ineffective by failing to object to the admission of his videotaped confession.  The Michigan Court of Appeals denied his claim on direct review in summary fashion: "Defendant's actual ineffectiveness arguments consist of speculation, do not find support in the record, and are legally unavailing." *Thompson*, 2009 WL 4985244 at \*3. This decision, although brief, is entitled to deference under the AEDPA.  *Harrington,* 562 U.S. at 97-98.  The petitioner, therefore, satisfies his burden only by showing "there was no reasonable basis for the state court to deny relief."  *Id.* at 98.

Tracking the petitioner's argument leads to the Fourth Amendment.  He contends that his statement followed an unconstitutional arrest because no warrant had issued yet.  "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).  The Michigan Court of Appeals denied the petitioner's claim that his rights under the Fourth Amendment were violated.  The state court held that is was unclear whether the petitioner was arrested inside or outside his home, or whether the police were given consent to enter the home. If the petitioner was outside his home, the state court held that the arrest was proper because the police had probable cause to believe that the petitioner had committed a felony. *Thompson*, 2009

-26-

WL 4985244 at *2.  In the event that the petitioner was inside his home, the Michigan Court of Appeals found no Fourth Amendment violation because the police were faced with exigent circumstances giving rise to an exception to the warrant requirement.  The exigent circumstances were the potential for the destruction of child sexually abusive material.  *Ibid.*  Because the Michigan Court of Appeals concluded that no Fourth Amendment violation occurred, counsel cannot be said to have been ineffective by failing to move to suppress the statement on the basis of a Fourth Amendment violation, since any such objection would not have been upheld.  *See Knowles*, 556 U.S. at 122 ("This Court has never established anything akin to the Court of Appeals' 'nothing to lose' standard for evaluating *Strickland* claims.").

c.

The petitioner alleges that counsel was ineffective by failing to investigate and prepare for trial.  The petitioner lists the following alleged shortcomings in support of this claim: (1) counsel failed to interview the state's witnesses or any other witnesses; (2) counsel failed to investigate potential Fourth Amendment claims; (3) counsel failed to file pretrial motions regarding the prosecutor's withholding the medical report; (4) counsel failed to interview the doctor who examined the victim; (5) counsel failed to consult or call an expert on the psychology of child sexual abuse; (6) counsel failed to notice deficiencies in the arrest and search warrants and the absence of a written complaint; and (7) counsel failed to determine whether a second police interview of the victim occurred.  These claims are all meritless.

The Michigan Court of Appeals found the petitioner's ineffective assistance of counsel claims based upon counsel's alleged failure to investigate to be "rambling" and based on speculation.  *Thompson,* 2009 WL 4985244 at *3.  The Court finds the Michigan Court of Appeals'

-27-

holding is in accordance with *Strickland*. The petitioner's allegations are conclusory, lacking in factual support, and fall far short of satisfying the AEDPA's doubly deferential standard.

d.

Next, the petitioner argues that counsel was ineffective by failing to challenge inconsistencies in the victim's story. In fact, defense counsel did highlight some inconsistencies between the victim's preliminary examination testimony and her trial testimony. Although defense counsel did not cross-examine her for an extended period of time, the petitioner has failed to rebut the presumption that defense counsel's cross-examination of the victim was the result of reasonable trial strategy. "[H]ow much to impeach a witness is generally a matter of trial strategy left to the discretion of counsel." *Dansby v. Hobbs*, 766 F.3d 809, 835 (8th Cir. 2014); *see also Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."). Here, it would have been reasonable for counsel to conclude that relentless cross-examination of the child victim would serve little purpose other than to alienate the jury.

e.

The petitioner argues that counsel was ineffective by failing to object to hearsay testimony. The petitioner's argument appears to focus on the following testimony: Ginger Huffman's testimony that the petitioner admitted to her that he had taken photographs of her daughter, and Huffman's testimony that the victim told her the petitioner had touched her.

The petitioner's admission to Huffman that he had taken photographs of A.B. was not hearsay under Michigan Rule of Evidence 801(d)(2), which provides that a statement is not hearsay if it is offered against a party and if the statement is the party's own statement. Huffman's testimony

-28-

that A.B. told her the petitioner had fondled her in addition to taking pictures was elicited first by defense counsel during cross-examination of Huffman. The testimony appears to have been elicited to highlight for the jury the piecemeal fashion in which the allegations were brought forth. Defense counsel's strategy was to question whether the touching actually happened or was simply suggested by the police and physician's questions. The petitioner has not shown that this strategy was unreasonable.

f.

Finally, the petitioner argues that counsel was ineffective by failing to require the prosecutor to locate and serve the victim with a subpoena when the state wanted to delay the trial. Other than this conclusory allegation, the petitioner provides no support for this argument. He has not pointed to any portion of the record to support his argument that trial was delayed because of the victim's absence. He also failed to identify any way in which he was prejudiced by his attorney's alleged failure. Relief is denied on this claim.

G.

The petitioner argues that the trial court never acquired jurisdiction over his case because the magistrate judge failed to file the return required by Michigan Court Rule 6.110(G). The question of the trial court's jurisdiction is a state law matter. "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). As a matter of federal law, the purpose of a preliminary examination is to determine whether probable cause exists to justify continued detention of a person charged by complaint or information. *See Gerstein*, 420 U.S. at 118. The abridgement of that right may undermine the validity of continued pretrial detention, but not the ensuing conviction. Under Michigan law, any error in the sufficiency of the

-29-

proofs at preliminary examination is considered harmless if there is sufficient evidence to convict at trial. *See People v. Hall*, 435 Mich. 599, 602–03, 460 N.W.2d 520, 522 (1990). So it is under federal law as well. *See United States v. Mechanik*, 475 U.S. 66, 73 (1986). Moreover, there is no federal constitutional right to a preliminary examination. *See Gerstein*, 420 U.S. at 123 & 125 n.26; *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965). Habeas relief is denied on this claim.

III.

For the reasons stated, the Court finds that the petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 25, 2015

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 25, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI